(108 App. Div. 128)

DAVIS v. MAXWELL.

(Supreme Court, Appellate Division, Third Department. October 24, 1905.)

1. HIGHWAYS—AUTOMOBILES—FRIGHTENING HORSES—NEGLIGENCE—EVIDENCE.
   A finding of negligence on the part of defendant, the driver of an automobile. is not authorized by evidence that, when at the top of a hill he saw plaintiff's team at the foot of it, he disconnected the engine from the running gear of his machine and ran down by gravity, at a speed of three or four miles an hour, passing the team five or six feet from it. without stopping, though just as he was opposite it the horse swerved and threw plaintiff out; the horse till then having given no sign of restiveness, and plaintiff having given defendant no signal to stop.

2. SAME—INSTRUCTIONS.
   Where, in an action for injury to plaintiff by his horse being frightened by defendant's automobile just as it passed the team, the court instructed that, if defendant drove his machine down towards plaintiff at the speed and in the threatening manner claimed by plaintiff, the jury might determine whether defendant was negligent, but did not instruct as to how they should consider defendant's conduct if he passed as he testified, a new trial should be granted; an inference of negligence not being authorized from the manner of passing testified to by him, and it being likely that the jury concluded that, though he passed as he testified, he was negligent in passing without stopping and nearer than necessary.

3. EVIDENCE—OPINION OF EXPERTS—HYPOTHETICAL QUESTIONS.
   Allowing an expert to give an opinion based, not merely on facts contained in the hypothetical question, but also on facts derived by him

from other sources, which were not the subject of testimony in the case, and which were known only to himself, is error.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2365.]

Appeal from Trial Term.

Action by Cora B. Davis against John Maxwell. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Joseph Beal, for appellant.
Charles H. Perry and S. M. Wing, for respondent.

PARKER, P. J. Plaintiff was driving her horse, hitched to a road wagon, easterly along the highway. The beaten track of such highway was on its right-hand or southerly side, and the grade easterly was a slight rise, so that a long distance ahead of her she could see, coming over the top of the rise, the automobile of the defendant, which he himself was driving, and in which were his wife and another lady riding with him. She, the plaintiff, had confidence in the steadiness of her horse and gave the defendant no signal whatever. She claims that as he came over the rise and down the grade his speed increased, and that when he passed her horse his automobile was running at a rapid rate of speed. She further claims that as he approached her he was running in the beaten track on the same side of the highway in which she was driving, and thus directly facing her horse, and had he continued on that line he would necessarily have run her down; that owing to the ditch, or formation of the ground, on that side, she could not have turned further to the right than she was driving when she first saw him coming over the rise; that he approached her in such threatening manner until he got very close to her horse's head, and then turned suddenly from her to his right, and passed so that his wheels were only about 18 inches distant from hers; that this manner of passing at such a speed and so close to her frightened her horse, which swerved to the right away from the machine and overturned her carriage over the bank and into the ditch, and she was thereby severely injured. This action is brought to recover damages against the defendant for such alleged negligent conduct on his part. The jury have rendered a verdict of $2,000 in her favor, and from the judgment entered thereon, and from an order denying a new trial on the judge's minutes, this appeal is taken.

The defendant squarely denies this charge under oath. He testifies that as he came over the rise he saw the plaintiff approaching from the west, and he disconnected the engine from the running gear of his machine, and ran down the incline by the force of gravity and the momentum which he had already acquired alone; that he was not running over three or four miles an hour when he came opposite the horse; that as he approached the horse it exhibited no symptoms of restiveness or fright, and that he was given no signal and saw nothing whatever in the conduct of the driver or of the horse to indicate that the horse was likely to be frightened; that as he came down the incline

he began to turn to the right a long distance before he came to the horse, and that when he got opposite the horse he was some five or six feet north of it; that no exhibition of fear was manifested by the horse until just as the machine got opposite it, and then he made a sudden swerve or jump to the right, and, being so near the edge of the bank, he took the right wheels of the carriage over it, and the plaintiff was thrown out. The left-hand wheels did not go over the bank. The little daughter was not thrown out, and the horse at once pulled the carriage back into the road and ran up it a few hundred feet until it was stopped.

From a careful reading of this evidence, I am much impressed with the defendant's claim that he did nothing for which he should be charged with negligent conduct causing this accident. Notwithstanding the statute, which authorized the defendant to use the road with his machine, and, in the absence of any signal, to pass the plaintiff at the rate of eight miles an hour without stopping (section 163 of the highway law [Laws 1890, p. 1206, c. 568], as amended by chapter 625, p. 1418, of the Laws of 1903), he was nevertheless obligated to take notice of the condition before him, and if it was apparent that by any particular method of proceeding he was liable to work an injury, either by frightening a horse or colliding with another, it would be his duty to adopt some other and safer method, if with reasonable care and prudence he could have done so. Knight v. Lanier, 69 App. Div. 454, 74 N. Y. Supp. 999; Murphy v. Wait, 102 App. Div. 121, 124, 92 N. Y. Supp. 253. But the question is, was he confronted with any such situation, that required him to act in any manner different from what he did act? It is to be noticed that the negligence specified in the complaint is that the defendant omitted to stop on signal and passed the plaintiff at a rapid speed while her horse was frightened and unmanageable. There is no suggestion in the complaint that the defendant frightened the horse by the close and threatening manner in which he approached it. Now, on the trial, it is true that the court told the jury that if the defendant drove his machine down towards the plaintiff at the speed and in the threatening manner, and as close as her counsel claimed upon the trial he did, they might determine whether that was a proper exercise of care and prudence on his part; but he nowhere instructed them as to how they might, or must, consider the defendant's conduct if they believed he passed the plaintiff exactly as he testified he did pass her. He instructed them generally that the sole question in the case was whether the automobile was being propelled at an unreasonable and improper rate of speed, or was being run along the highway with care and prudence and in such a manner as that the defendant had shown care and given due attention to the rights of this plaintiff upon the same highway; but he has nowhere instructed them as to whether they might consider that he was running with care and prudence if he ran just as he testified he did. As the case went to the jury, it is impossible to tell whether they believed the plaintiff's or the defendant's claim as to the manner of the defendant's approach; and in my judgment it would be error, as matter of law, to hold the defendant guilty of negligence, under the situation in this case, if he approached and

passed as he claims to have done. The evidence upon that question is far from satisfactory as to the correctness of the plaintiff's claim. Concededly the horse gave no sign of restiveness until the defendant was directly opposite him. The defendant then stopped almost instantly, thus indicating that his speed was not excessive; and the evidence that the defendant either purposely or carelessly ran too close to the horse by no means convinces me that such claim is a correct one. There is not the slightest reason apparent why the defendant would not naturally have done just as he claims he did. The road was a broad and smooth one, with nothing to obstruct his turning out an ample distance ahead of the approaching carriage. He saw it as he came over the incline. His wife also saw it and called his attention to it. He was with two ladies, and evidently not driving his machine in a wild or reckless manner. No possible reason why he should not avoid the carriage by a reasonable safe distance, and every reason why he should, and naturally would. I am apprehensive that the jury, instead of concluding that the defendant did run down upon the plaintiff as her counsel upon the trial claims, believed that he was guilty of negligence because he passed her without stopping and at a distance nearer than he need to have done. In my opinion, such a belief would be unwarranted by the law, and, if adopted, would be a rank injustice to the defendant. As the evidence strikes my mind, it seems that such was most likely the conclusion of the jury, and for that reason I am inclined to grant the defendant a new trial.

But there is another reason why this judgment must be reversed. After the plaintiff was thrown from her carriage, she was assisted back into it, and, though somewhat bruised, concluded that she was not much injured and rode home. Afterwards, however, she claims to have become seriously ill, and at the time of the trial to be suffering from an affection of the nervous system, caused by injuries then received. As bearing on the question whether her then condition was the result of such injuries, a hypothetical question was put to a physician who had attended her, in which were stated certain facts which were calculated to enable him to give his opinion upon that question. The form of the question, as put to the witness, was substantially as follows:

"Now, taking into account the history of the case as you have got it, and your examination of the plaintiff, and assuming all the facts stated in the question put to you to be true; are you able to give an opinion as to the cause of her present condition?"

This question was objected to by the defendant's counsel, on the ground that it was incompetent and inadmissible, and that no foundation was laid for it and it was not a proper form of question and assumed facts not proven. This objection was overruled and the witness allowed to answer; and the answer was, "Yes," that he could. And in answer to the further question, "What, in your opinion, is the cause of her present condition?" the answer was that it resulted from her injuries then received.

It is manifest that this witness has been allowed to give an opinion based, not merely upon facts contained in the hypothetical question, but also upon facts derived by him from other sources, which were not the subject of testimony in the case, and which were known only

to himself.   Clearly, such an opinion is not properly received as expert evidence to aid the jury.   It violates the first principles of that kind of evidence.   "The opinion of an expert witness can properly be called out only by a hypothetical question, based upon facts which are either admitted or as to which some testimony has been given, sufficient to present the question as to their existence to a jury.   Where there is no foundation in the evidence for the facts assumed, an answer to the question is properly excluded."   For this reason it was error to receive it.   People v. Harris, 136 N. Y. 423, 33 N. E. 65.

A further question, similar to the last one, was put to this witness, and also another similar question was put to Dr. Chase, and similar errors there committed.   These errors were evidently material to the issue being tried, and were calculated to work injuriously to the defendant.

For the above reasons, the judgment and order must be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event.   All concur; SMITH and CHASE, JJ., in result.